### IN THE

## SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW-YORK,

IN MAY TERM, 1833, IN THE FIFTY-SEVENTH YEAR OF OUR INDEPENDENCE.

---

## S. W. & H. BALDWIN *vs.* W. CALKINS and others.

*Twenty* years occupation of the land of another by flowing it with water, affords a presumption of a grant of the use of it in that particular manner, and for the damage sustained thereafter no action lies ; but if, after flowing the land of another for *ten years*, by means of a dam of a particular height, the party by a new constructed dam raises the water higher, and flows more land than he originally did, although he will be justified after 20 years in flowing the land to the extent originally covered, he will be answerable in damages for the increased quantity he flows.

Where a party is authorized by an act of the legislature to erect and maintain a dam in a public river, and provision is made by the act for the assessment of damages in case the lands of others are injured by the flowing of the water of the river occasioned by such dam, the *rule of damages* is not the value of the land, but the *annual value thereof* from the time that the injury commenced until the assessment of the damages.

If the party waits *ten years* before having his damages assessed, he is entitled to the value of the use of the land for only *six years*, in analogy to the statute of limitations fixing the period for which a party can recover damages by *action* in such cases.

The cause of action is *continuing*, and although more than *six years* have elapsed since the first erection of the dam, the party injured is entitled to recover for six years immediately preceding his application for redress.

The remedy given to a party whose lands are overflowed, *it seems*, is *not assignable.*

Where a claim is made for injury to lands which have been overflowed for 20 years, for a portion of which time the party causing the injury is justified, and for part not, and damages are assessed for the *whole time,* the assessment will be set aside.

Where a special power is granted by statute, affecting the property of individuals, as conferring upon the judges of a county court the power of assessing the damages of individuals in consequence of a public improvement, but requiring that such judges *should not be interested,* the statute must be strictly pursued, and it must in general appear on the face of the proceedings that it has been so pursued; yet where a party affected by such assessment had notice of the application to the judges who performed the duty assigned, appeared before them, contested the claim set up, and did not object to the proceeding on the ground of the interest of the judges, he was deemed to have *waived* the objection, although the fact was not averred that the judges were *disinterested.*

Upon *certiorari* brought to review the assessment, this court will inquire into the principles upon which it was made, and if found to be erroneous, the assessment will be set aside; but the assessment, if made on correct principles is *conclusive* as to the *amount,* as this court can neither increase or diminish it.

If the assessment in a case of this kind be adjudged to have been made on erroneous principles, this court has not the power to send back the proceedings, but must reverse them *in toto,* and the party seeking the benefit of an assessment must commence *de novo.*

CERTIORARI to judges of Onondaga to remove proceedings on an assessment by them of damages under an act of the legislature. In 1809, the legislature of this state passed an act entitled, "An act to authorize Jonas C. Baldwin to erect a dam across the Seneca River," *Laws of N. Y. vol. 5, Webster's ed. 453,* by which Baldwin, his heirs or *assigns* were authorized to *erect* and *maintain* a dam across the Seneca river, at the head of the rapids called *McHarry's rift,* of a height not exceeding seven and a half feet, on condition of erecting and maintaining a canal for the passage of boats. By the second section of the act, Baldwin, his heirs or assigns were authorized to enter upon any land necessary for the erection of the dam and canal, first paying to the owner such damages or compensation as might be agreed upon with the owner; and in case of disagreement as to the same, it was made the duty of Baldwin to apply to any three judges of the Onondaga common pleas, *not interested in the land,* to assess the damages; notifying the owner of the time and place of assessment, and requiring his attendance. It was made the duty of the judges

NEW-YORK,
May, 1833.

Baldwin
v.
Calkins.

after having assessed the damages and certified the amount under their hands and seals, to deliver the assessment to the owner and a copy to Baldwin; and the sum assessed, when paid, it was declared should be deemed a full compensation for the damages. It was also enacted that the like proceedings should be had in cases where any *land should be injured by the flowing of water* of the river occasioned by such dam, either on the application of Baldwin or of the owners of the land injured. By the act of 1809, the privilege was granted to Baldwin, his heirs and assigns to take and apply the water in the dam to the use of mills and hydraulic works, or to any other use to which the same is capable of being applied, upon land owned by him, his heirs or assigns, and the act, and the privileges thereby granted, it was declared should continue for the term of 20 years. In 1809, the dam was built according to the act; subsequently the defendants became the *assignees* of Jonas C. Baldwin, and in 1827 an act was passed to continue in force the act of 1809, *Laws of* 1827, *p.* 192, by which that act, together with the rights and privileges therein contained and granted, were *continued* unto the defendants in this cause for the term of 21 years, from and after the 24th February, 1829, *subject, however, to all the provisions and conditions* contained in the act of 1809, except those relating to the keeping and maintaining of a canal, in respect to which new and different conditions were imposed. In July, 1830, W. Calkins and others, claiming to be the owners of a farm, made application to three of the judges of the Onondaga common pleas to assess the damages which they had sustained by the flowing of the waters of the Seneca river upon their farm, in consequence of the dam formerly erected by Jonas C. Baldwin across the Seneca river, which dam, and the privileges appertaining to the same, they alleged had been assigned to the defendants, and the dam *rebuilt* by them. The judges appointed the 7th July, 1830, and designated a place when and where they would proceed to the assessment of the damages. The defendants, S. W. & H. Baldwin, had notice of the time and place designated for the purpose aforesaid, and *appeared* accordingly. Several witnesses were examined on

the part of the applicants, when the further hearing of the case, on the application of the defendants, was *postponed* until a subsequent day, when the parties again attended, and further testimony was produced on the part of the applicants, who proved that at the time of the erection of the dam in 1809, one *Robert Rogers* was the owner of the farm now claimed by the applicants; that in 1816 he sold and conveyed the same to *David Calkins,* the father of the applicants, who entered into possession of the farm in 1817, and died in possession in 1818, and that the applicants are his heirs at law, and have been in the possession of the farm since the death of their father; that from 15 to 20 acres of the farm were overflowed by the water raised by the dam, and that the land thus covered would be worth from $25 to $30 per acre, if not overflowed; that 9 or 10 years previous to the hearing before the judges, the old dam broke and was carried off, and a *new dam was built by the defendants* which *raised the water higher,* did more damage and flowed more land than did the old dam; that previous to the application to the judges in this matter, the applicants called upon the defendants *to agree on the amount of damages,* but that they could not agree, and that no damages had ever been assessed by the judges of Onondaga to *Robert Rogers,* or any *other person,* on account of the flowing of the land in question. The applicants claimed to be allowed the full value of the land; or in the language of the return, *to recover the damages from the time of their title accruing forever,* on the ground that the defendants were, by virtue of the several statutes on the subject, authorized to flow the lands forever. The defendants objected to the allowance to the applicants of any damages whatever, on the grounds, 1. That the portion of the act of 1809, authorizing the assessment of damages, was in the revision of 1813 repealed; 2. That the applicants were barred by lapse of time; and 3. That the defendants had acquired the right to flow the land, in consequence of the use and enjoyment of the privilege for more than 20 years by themselves and their ancestor. These objections were overruled. The defendants then proved that the value of the land in question in its natural state did not exceed from $6 to $8 per acre, and that the improve-

ments, in consequence of the dam and the mills of the defendants, benefitted more than it injured the farm of the applicants. Further testimony was given as to the value of the land and the amount of damages, and the parties having been fully heard, the judges assessed the damages of the applicants at $300, stating in their certificate that they "assessed the said damages in pursuance of the statute, at the sum of three hundred dollars, which is caused by the flowing of the waters upon the said land, occasioned by the dam across said river, which is continued by the said Stephen W. and Harvey Baldwin." The defendants sued out a *certiorari*, to which the judges made a return, setting forth the above facts.

*J. C. Spencer & J. A. Spencer*, for the plaintiffs in error. The assessment is invalid, as it is not shewn that the judges were *not interested in the land*. This being a special power conferred by the statute, ought to have been strictly pursued and should appear to have been pursued on the face of the proceedings. 3 *Johns. Cas.* 107. The privilege of flowing the land had been exercised by the defendants and their grantor, Jonas C. Baldwin, for more than 20 years previous to the application for the assessment; after so long an occupation, a grant is to be presumed. *Angel on Water Courses*, 43, 70, 48. 1 *Campb.* 320. 3 *id.* 80. If it be said that the defendants now flow more land than was flowed originally, the answer is, give them at all events what they have had for 20 years; and if right here, the assessment must be reversed, as damages have been given as well for the old as for the new injury. But the allowance of any damage whatever was erroneous; the assessment of damages designated by the statute was substituted for the remedy by action, and the right to have such damages assessed accrued in 1809, when the dam was originally erected. *Rogers* was then the owner of the land and the party injured, and when in 1816 he conveyed to the father of the applicants, he could not transfer his claim to damages to his grantee; such claim being in the nature of a right of action, was not the subject of transfer, nor did he in fact make such transfer. When the dam was built and the land of Rogers overflowed, the rights of the parties became fixed; it was in

fact an appropriation of the land for the time limited in the statute, and the law had prescribed the compensation and the mode of its liquidation ; the injury was entire, and the remedy must be entire. Rogers was entitled to seek that remedy, and no one else can claim it ; the statute cannot receive a construction which will allow of a repetition of claims, for it would be ruinous to the party to whom the legislative grant was made. Might not *Rogers* have claimed an assessment of damages ? and had such assessment been made, would it not have defeated the claim of his grantee and the heirs of such grantee ? Again, if the whole value of the land was the proper measure of damages, the claim necessarily extends back to 1809, and then Rogers was the owner ; if only the annual value of it ought to have been given, it should have been limited to the time when the title of the father of the applicants accrued, and the benefit accruing to the land from the improvements made by Baldwin should have been deducted from the injury. Nor were the applicants entitled to damages in consequence of the erection of the new dam, for no damages were specifically proved as arising from that cause ; the evidence was general, applying to the whole period during which the lands were overflowed. Besides, having omitted to make a claim for more than six years after the accruing of the injury, if any, arising from the new dam, the applicants are barred by lapse of time, in analogy to the statute of limitations, from making such claim. The remedy given by statute being substituted for the action at law, the parties can have no greater rights than they would have had by action had they been permitted to resort to it, 6 *Johns. C. R.* 387 ; 10 *Wheaton,* 152, 146 ; 7 *id.* 59, 119 ; 2 *Saund.* 175, *n. a. ;* 6 *Conn. R.* 615. Here also the injury was entire, and the remedy must be entire ; and the injury having accrued more than six years previous to the application to the judges, the remedy is gone.

*C. P. Kirkland,* for the defendants in error. The objection that it does not appear that the judges were *disinterested* cannot be taken here. This case is clearly distinguishable from 3 *Johns. C.* 107. Here the parties had *notice* to whom the ap-

plication would be made for the assessment, appeared before the judges, and instead of objecting to their being interested, submitted to have the hearing proceed, contested the claim made by the applicants, and prayed and obtained an adjournment; after this they cannot be permitted to object that it does not appear that the judges were disinterested. If such objection existed, it should have been made on the hearing before the judges. The objection urged before the judges, that the provisions of the act of 1809 relative to the assessment of damages were repealed by the act of 1813, is unfounded; the latter act contains no repealing clause, and on the contrary, the act of 1809 is expressly recognized as existing and in force in the act of 1827, continuing the act of 1809, and in an act passed in 1828 declaring it a public law. The great question in this case is whether the grantee of the privileges conferred by the act or his assigns have made the compensation for damages provided by that act. The damage caused by the flowing of the land was a continuing damage, and nothing having been claimed or paid on this account previous to the demand set up by the defendants in error, and being the owners of the land, they had a perfect claim to damages and a right to institute the proceedings prescribed by the act of 1809. In 4 *Wendell,* 667, this court admit that the claim of these parties to damages is manifest, but that instead of bringing an action, they were bound to resort to the statute remedy. The claim to damages is in no way affected by the delay to prosecute either of the defendants, or of those under whom they hold, nor by the length of time during which the plaintiffs in error or their grantor flowed the land; for the right to maintain the dam and enjoy the privileges conferred by the act of 1809 is concurrent with the liability to make compensation. An unqualified grant cannot be presumed where the grant itself is before the court, and imposes certain obligations upon the grantee. The privileges granted being subject to the terms imposed, such terms can be discharged only by performance. There is no limitation in the act as to the person to make the claim, or the period within which it is to be prosecuted. The intent of the legislature is manifest that compensation shall be made for damages done, and the funda-

mental principle that private property shall not be taken un-
der the authority of an act of the legislature without just com-
pensation, outweighs the fanciful theories advanced in analo-
gy to the statute of limitations.    At all events, the plaintiffs
in error are answerable for the damages caused by the re-con-
struction of the dam, which took place after they became the
owners of the land, and the assessment of the judges is *con-
clusive* as to the amount to which the applicants for damages
were entitled.

By the Court, SAVAGE, Ch. J.    The first objection taken
by the plaintiffs in error on the argument is, that it does not
affirmatively appear that the judges who made the assess-
ment were not interested in the lands.    The statute says that
application may be made to three judges, &c. *not interested in
such land*.    It appears from the return that notice was given
to the plaintiffs in error of the time and place of the meeting
of the judges, for the purpose of assessing the damages, and
that the plaintiffs attended ; that they asked an adjournment,
which was granted, and that they afterwards attended and
made no objection on the ground of the interest or supposed
interest of the judges.    It seems to me, therefore, that if there
had existed any such objection, it was waived.    This case is
distinguishable from that of *Gilbert* v. *The Columbia Turnpike
Company, 3 Johns. Cas.* 107.    The act of the judge in that
case was altogether *ex parte ;* no notice was required nor giv-
en to the opposite party.    The statute under which the pro-
ceedings in that case were instituted, enacted that in case of
disagreement between the company and any owners of lands
over which the road might pass, the company should apply
to one of the judges of the common pleas, *not interested in said
road,* who should appoint commissioners to assess the dama-
ges. By the return to the certiorari, it appeared that the com-
missioners had been appointed by a judge of the common
pleas, but it did not appear that he was not interested in the
road.    The party in that case had no notice of the applica-
tion to the judge to appoint commissioners ; the company pro-
ceeded at their peril ; they were bound to see that the statute
was strictly pursued, and that the proceedings on their face

NEW-YORK,
May, 1833.

Baldwin
v.
Calkins.

should shew a strict compliance with the statute; but had it appeared in that case that the party to be affected had appeared before the judge, and had been called upon to shew cause why commissioners should not be appointed, and this had been required by the statute, could he afterwards object that the judge was not qualified, on the ground of interest? Should he not have made his objection when he appeared? and if he omitted to do so, did he not waive it? Is not his silence an admission that the judge was qualified according to the statute? In that case no legal notice was given to the party whose lands were taken, and he did not appear at all; the whole proceeding was ex parte; nothing was or could be waived in such a case; yet, in that case, the question of interest was not a question of jurisdiction, but of regularity. The court say that the disagreement of the parties and consequent application lay at the foundation of the proceedings; that the disinterestedness of the judge and commissioners was necessary to an impartial decision. Consent cannot give jurisdiction, but cures irregularity. An appearance before judges of any other county than Onondaga could not give them jurisdiction, but cures any irregularity not objected to at the time. In this case the parties appeared and made no objection; this was an admission of the competency of the judges.

2. The plaintiffs' second point is that there can be no claim for damages sustained by the dam of 1809, as after so long an occupation a grant is to be presumed. The case of *Bealy* v. *Shaw and others*, 6 *East*, 208, is much in point. The defendants and those under whom they claimed had used a certain portion of a river for much more than twenty years when the plaintiff built a mill on the same stream below the defendants. About four years after the erection of the plaintiff's mill, the defendants drew out of the river by a sluice a much larger quantity of water, which was returned to the stream below the plaintiff's mill, by means of which the plaintiff was injured. The defendants contended that, having had the free use of the river for a long time, and having appropriated as much as they thought proper, it was not competent for the plaintiff to abridge their right by erecting new works, but that he must

take the river subject to the defendants' use of it. The judge decided that every person possessing lands on a stream of water was entitled to the natural flow of the stream, unless there existed in others a right to divert a part of it ; that every such exclusive right was to be measured by the extent of its enjoyment ; that if more water had been taken from the river after the plaintiff built his mill, this was a damage to him for which an action lay. The court, upon a motion for a new trial, held the decision at nisi prius to be correct. Lord Ellenborough, in giving his opinion, among other things, says : " I take it that twenty years exclusive enjoyment of the water in any particular manner affords a conclusive presumption of right in the party so enjoying it, derived from grant or act of parliament ; but less than twenty years enjoyment may or may not afford such a presumption, according as it is attended with circumstances to support or rebut the right." The common law has limited this period, in analogy to the statute of limitations ; twenty years occupation of another person's land, under a claim of right, gives a title—it affords a presumption of a grant. So occupying the land by flowing it with water for twenty years affords a presumption of a grant of the use of it in that particular manner, and for the damage sustained thereafter no action lies. The law was so recognized in Connecticut, in *Sherwood* v. *Burr*, 4 *Day*, 244. In that case the plaintiff had a fulling mill on the same stream upon which the defendant lower down had a corn mill. The plaintiff's mill had been erected more than forty years, and the defendant's more than eighty years. Within *ten years* the defendant had raised his dam one foot higher than it had been, by which the water was thrown back upon the plaintiff's wheel and it became useless. The plaintiff was held entitled to recover ; for though the defendant in that case would have had a right to raise his dam in the first instance to its present height, yet, having raised it only to a certain height, and permitted another to acquire rights by occupation for more than 15 years, which in that state is the limitation by which title is acquired by adverse possession, his original right was lost by nonuser. So in the case of *Stiles* v. *Hooker*, 7 *Cowen*, 266, it was held that where the defendants had used the water at a certain

height for 20 years, a grant would be presumed to that extent; but where the water was raised higher, so as to injure the plaintiff's mill above on the same stream, the defendants were liable for the injury arising from the increased height of the water. This principle, applied to this case, is a complete justification to the plaintiffs in error as to any damage arising from the flow of water occasioned by the dam of 1809. Twenty years having expired since the erection of that dam, a grant will be presumed of a right to continue the dam at the height of the original dam, and to raise the water as high as it stood for 20 years. But as to the increased quantity of land covered with water by the dam of 1820, the owners of the dam have no justification. The act of 1809 authorized the erection of the dam, but provided a mode of ascertaining the damages which individuals might sustain. Though the defendants in error have by delay lost the right to damages arising from the dam of 1809, if the dam of 1820 raises the water higher, and flows more land, the provisions of the act of 1809 apply to ascertain the damages by the second dam, until 20 years shall have expired after the erection of the second dam.

The rule of damages adopted by the judges seems to have been the value of the land ; that is wrong. The rule for this case would be the use of the land covered by the increased height of the water above the dam of 1809, for six years. Had it been a case in which an action could have been brought, the plaintiff could not recover for more than six years, because it was his own fault that an action had not been sooner brought. In analogy to the statute, the defendants in error cannot appraise damages for a longer period. The defendants in error founded their claim for damages *forever*, as it is expressed, on the assumption that the dam was to continue forever. The grant was in the first place for 20 years ; the second for 21 years more ; but that is not the criterion by which to ascertain the damages for flowing land. The value, deducting the benefit, would have been the rule of assessment for any land taken for the *erection of the dam* under the act of 1809 ; but not as to *flowing*. It may be, that when the plain-

Vol. X.                    23

tiffs in error see the amount of damages assessed, they may prefer to take down their dam, and then the defendants will have the use of their land; of course, they should not have damages for being deprived of that use.

There is no foundation for the point made before the judges that the second section of the act of 1809 was repealed by the act of 1823. The latter act declared certain waters highways, but specified the rights which certain individuals had to encroach upon the rights of the public in passing upon those highways. This act contains no repeal of the previous acts, and was not intended to affect the rights of individuals, any farther than the rights of the public were concerned.

3. If I am right in the preceeding views, it is not important to consider the third point made by the plaintiffs in error, that *Rogers* had a mere right of action which could not be assigned with the conveyance of the land; no right of action, strictly speaking, existed. This was the case of a public improvement; the damages were to be ascertained in the manner pointed out by the statute, and not by action, as has been decided between these parties, 4 *Wendell* 667. . I am inclined to the opinion, however, that in making assessments the judges should consider the damages analogous to a right of action, and not assignable.

4. The plaintiffs in error insist that the defendants are not entitled to damages in consequence of the dam of 1820 : 1. Because none were specifically proved as arising from that cause ; and 2. Because, by analogy to the statute, they are barred by delaying to apply within six years after the building of the dam. On the first ground the assessment must be set aside ; the judges have not confined their assessment to the damages arising from the dam of 1820, but have embraced the whole period during which the lands have been overflowed. The second proposition under the fourth point cannot be sustained ; the cause of action is a continuing one ; the damage was not all done by the erection of the dam, but is done daily by the continuation of the dam ; so that the defendants in error are entitled to recover all the damages sustained within six years previous to their application, and in that respect the proceeding is analogous to the action for mesne profits, or for use and occupation.

NEW-YORK,
May, 1833.

Baldwin
v.
Calkins.

The defendants in error contend that the assessment of the judges is *conclusive* as to the amount of damages. It would be so undoubtedly, had the assessment been made upon correct principles. It is not in the power of this court to review the assessment as to its amount, and increase or diminish the amount ; that is a subject not under our control. Upon certiorari we can only look into the correctness of the proceedings of the judges as they appear upon the record ; the evidence before them as to the amount of damages, constitutes no part of the record. But we have a right, and it is our duty to inquire into the principles upon which the judges assessed the damages, and if they were erroneous, the whole assessment must be set aside. I apprehend we have no power even to send the proceedings back to the judges, but that new proceedings must be instituted, if the defendants in error wish to pursue the remedy which they have according to the preceding principles. The judges having heard the case and given their certificate, are *functus officii*, and can no more entertain jurisdiction of the matter again, without new proceedings, than a justice can try a cause again, after reversal of his judgment, until a new suit is brought, where such suit is consistent with the decision reversing his previous judgment.

The proceedings of the judges must be reversed.