WILLIAM W. COWELL *vs.* FISHER THAYER.

Where a mill owner has acquired a prescriptive right to keep up a dam constant.y which, in its usual operation, would raise the water to a certain height, although from the leaky condition of the dam, or the rude construction of the machinery in his mill, or the lavish use of the stream, the water has not been usually and constantly kept up to such height, yet if he repair the dam, without so changing it as to raise the water higher than the old dam, when tight, would raise it, or if he use the water in a different manner, and thereby keep up the water more constantly than before ; this is not a new use of the stream, for which a land owner can claim damages, but is a use conformable to the mill owner's prescriptive right.

THIS was a complaint, in which it was alleged that the re · spondent, Thayer, on the 7th of September 1838, erected and had since, until the bringing of this complaint, on the 7th of September 1841, kept up a dam in the town of Wrentham, across a stream of water running from Whiting's Pond to Charles River, for the purpose of raising and detaining water to drive and carry certain mills upon and near said dam ; whereby the complainant's lands had been overflowed, during all parts of each year since said dam was so erected. He therefore prayed that a jury might be empannelled to assess his damages and determine to what height said dam should be kept up, and during what part of the year it should be left open, &c.

The respondent pleaded the general issue, and filed a specification of the grounds of his defence. The specified ground of defence, on which the question of law arose, was this : " The respondent will deny that said dam has been raised or altered, for more than 20 years, and will offer evidence to that effect. He will contend, and offer evidence to prove, that he, and those under whom he claims and justifies, have had and still have the

right to flow all the lands which have been flowed by means of said dam, and which said dam is calculated and adapted to flow ; and that he and they have had and still have the right to keep up and maintain said dam to its present height, without any liability to pay damages therefor to said complainant."

It appeared in evidence, at the trial in the court of common pleas, before *Strong*, J. that the respondent's mill had been erected about 30 years, and was built on an ancient privilege, where there had been a dam and mills from the early settlement of the town ; that the original dam was repaired about 40 years ago, and " was then raised a little, to bring it up to its original height, as it was supposed to have settled somewhat ; " and that the owners and occupants of this privilege have never paid any damage for flowing.

The respondent introduced evidence to prove that the water was not flowed any higher on the complainant's land, during the three years next before the bringing of this complaint, than it was flowed during the 20 years next preceding said three years.

The complainant introduced evidence to prove that the respondent, during said three years — though the dam might not be any higher, and the water might not have been flowed higher on the complainant's land, than it was during said 20 years — had kept the water on said land for a longer time, and for a greater proportion of the year, particularly in the spring and summer during said three years, than it was kept during said 20 years.

It was in evidence, that Whiting's Pond (at the outlet of which said dam was erected) was affected by droughts, and that it generally fell " some feet " in the course of the summer and autumn, and thus remained till the autumn rains ; but that there was no regularity in the time when the pond fell away, or in the length of time of its remaining low ; this varying as the seasons were more or less dry, and the water more or less economically used.

The respondent contended that the evidence introduced by him proved that, for one of said 20 years, he had kept the water on the complainant's land at as great a height, and for as long a

time, and during as great a proportion of the year, as it had been kept up during said three years.

It appeared that for two seasons next preceding the bringing of this complaint, the water had been kept up to high water mark, and upon the complainant's land, a greater proportion of the season and for a longer time than it was during the said 20 years, with the exception of the one year before mentioned ; and that this was in consequence of the respondent's having repaired leaks, closed one of the flooms, and used the water more sparingly by reason of using less machinery.

The court instructed the jury, " that if they were reasonably satisfied from the evidence, that the respondent, during the three years mentioned in the complaint, or during two of those years, kept the water up at high water mark, and kept it on the complainant's land, in consequence of the manner in which he used his mill, for a longer time, and for a greater proportion of the year, than it was kept up, and kept on his land, during the 20 years next preceding said three years, except during one year, though they should also be satisfied that the dam was no higher, and the water flowed no higher on the complainant's land, than during said 20 years ; and also that for one of said 20 years, the water was kept on the complainant's land as long, and for as great a proportion of the year, as it was during said three years ; they should find a verdict for the complainant."

A verdict was returned for the complainant, and exceptions were alleged by the respondent to the instructions given to the jury.

*Wilkinson*, for the respondent, cited Angell on Watercourses, (3d ed.) 109. *Alder* v. *Savill*, 5 Taunt. 454. *Baldwin* v *Calkins*, 10 Wend. 167. *Williams* v. *Nelson*, 23 Pick. 141 *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 241.

*Merrick & Cleveland*, for the complainant, cited 3 Kent Com. (1st ed.) 356. *Buddington* v. *Bradley*, 10 Connect. 213. *Stiles* v. *Hooker*, 7 Cow. 268. *Simpson* v. *Seavey*, 8 Greenl. 138. *Drewett* v. *Sheard*, 7 Car. & P. 465.

SHAW, C. J. This case presents a question of some importance to the rights of mill owners, and the owners of lands liable to be flowed.

Several points must be considered as now well settled. The owner of the land, over which there is a running stream, has a right to the use of the natural flow of the stream, to be reasonably used for mill purposes. No proprietor of land, on the same stream, has a right to divert the water or change the use of it, (independently of the statute right of flowing upon payment of damage,) to the injury of any other proprietor, unless such right has been acquired by grant or prescription ; but where the mill owner has in fact exercised the right of raising or diverting the water, by keeping up his dam and flowing the land of another for a period of twenty years, without objection or claim of damages, it is evidence of a right so to use the water, as acquired by prescription or grant. *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.*, 16 Pick. 241. *Williams* v. *Nelson*, 23 Pick. 141. *Mason* v. *Hill*, 3 Barn. & Adolph. 304. *Buddington* v. *Bradley*, 10 Connect. 213. *Baldwin* v. *Calkins*, 10 Wend. 167.

But it is equally well settled by the authorities, that if one proprietor has, by means of a dam, made a special use of the water, by penning it up, and throwing it back upon a proprietor above, or by holding it back from a proprietor below, or by diverting it, and has so used the water, without resistance or opposition from other proprietors, for the term of twenty years, he thereby establishes a right so to continue the use of it, by way of prescription or presumed grant.

We are then brought to the precise question, whether a mill owner, who has acquired a prescriptive right to maintain the water at a certain height, and who has erected a dam capable, in its ordinary operation, of raising the water to a greater height, but who, from the leaky condition of the dam, and his wasteful mode of using the water, has, for a considerable part of the 20 years, in fact not raised the water to the height, at which the dam, when tight, is capable of raising it, and by means of which the stagnant water has not been kept constantly so high on the land of an adjacent proprietor, can repair and tighten his dam, without raising it, and so change his machinery, by the substitution of breast wheels or over-shot wheels, for the under-shot wheels formerly used, as to keep up the water constantly to its higher level.

It is contended on the part of the land owner, that as the actual use of the water at a given height, by the mill owner, and the acquiescence in such use, by the land owner, is the foundation and proof, so it must also be the measure and limit of his right. This, to some extent, is true ; and where there is a definite limitation or modification of the use — one that is practicable and measurable — it will show a corresponding modi fication of the right. As where, for example, according to the custom of the country, a saw mill, or other mill, has been kept up in the winter only, and the mill owner has uniformly been accustomed to draw off the water sufficiently early in the spring to allow the growth of a crop of grass, and to continue it down, until the hay is cut and got in, it must be regarded as establish- ing a right to a winter privilege only, and not a constant privi- lege ; and then, flowing the land through the year must be con- sidered as a new use, not within the mill owner's prescriptive right.

So, where a dam had been kept up more than twenty years, but the water had been drawn down six weeks in each year, between June and October, to enable the land owners to get clay, it was considered good evidence of a right to keep up the dam, subject to such limitation. *Bolivar Manuf. Co. v. Ne ponset Manuf. Co.*, 16 Pick. 241. Other cases may easily be imagined, where a prescriptive right, proved by use and enjoy- ment, may be limited and qualified by a definite interruption in the constancy of such use, for a certain time or purpose, in favor of the person against whom the right is claimed. But in determining the legal rights of parties, the law looks rather to practical than theoretical distinctions, and seeks, as far as possi- ble, to place them upon grounds permanent and general, and upon principles applicable to the generality of cases, not shifting and varying with a slight change of circumstances. The right, when once established, shall be construed favorably to the party acquiring it. Conformably to these rules, it has long been held that where one has acquired a right to raise and maintain a head of water, by using it for one purpose, he may apply it to an- other : he may substitute a cotton factory for a saw mill, and

22 *

Cowell *v.* Thayer.

the like ; and this upon the ground that any other rule would put a stop to all improvements. *Cottel* v. *Luttrel*, 4 Co. 87. *Saunders* v. *Newman*, 1 Barn. & Ald. 258. *Biglow* v. *Battle*, 15 Mass. 313. *Johnson* v. *Rand*, 6 N. Hamp. 22. It comes, we think, within the spirit of the same rule, to hold, that when a man has, by his dam, raised a certain head of water, and maintained such dam long enough to raise the presumption of a grant. he may not only use his head of water for another purpose or branch of business, but he may repair his dam, and make it tighter, he may use improved machinery, taking the water from the top instead of the bottom of the floom ; and generally, he may use the water more economically, although the effect may be, to keep the water more constantly at the upper level. *Alder* v. *Savill*, 5 Taunt. 454.

As a general rule, the height, to which such a mill owner will have a prescriptive right to maintain the water, will depend upon the height of the dam, by which he has raised it. In speaking of the height of the dam, we mean it to be understood, as the efficient height of the dam ; the height to which such dam, when completed and finished, with its rolling dam, waste ways, &c. and in good repair and condition, will raise the head of water. Parts of the dam of earth, or other materials, may be raised higher than it is ever intended to raise the water by such dam. This is not intended ; but as already explained, the efficient height.

On the whole, we think the true rule is this ; that when one has acquired a prescriptive right to a constant mill privilege, by keeping up and using a dam more than twenty years, which dam, in its usual operation, would raise the water to a given height, and has used it, at his own pleasure, at that height, without any claim of right, on the part of any other person, to have it drawr or kept down, for any part of the year, or upon any definite occasion, he has a right to retain it at the same height, although from the former leaky condition of the dam, the rude construction of the machinery, or the lavish use and waste of the stream, the water has not in fact been constantly or usually kept up to that height. If therefore he repairs the dam, without so changing

it as to raise the water higher than the old dam, when tight and in repair, would raise it, or uses it in a different mode, and thereby keeps up the water more constantly than before, it is not a new use of the stream, for which an adjacent owner can claim damages, but a use conformable to his prescriptive right.

As it appears by the exceptions, that the court of common pleas gave a different instruction to the jury, in the present case, the court are all of opinion, that the verdict for the complainant must be set aside, and a

*New trial granted*