WILLIAM S. DE CAMP, Individually and as Trustee under the Will of JULIA L. DE CAMP, Deceased, Respondent, *v.* DANIEL A. BULLARD and JOHN THORP, Appellants.

MEASURE OF DAMAGES FOR USE OF STREAM BY TRESPASSERS, FOR FLOATING LOGS. The words "any and all damages and loss whatsoever," in an undertaking of indemnity, given by sureties for trespassers, in accordance with an order suspending, for a period, as a favor to the trespassers, a judgment restraining them from floating logs upon a stream on the plaintiff's lands, *held* to include the tollage, or the reasonable value of the use of the stream for the purpose of floating logs, as so used by the trespassers during the suspension of the judgment.

*De Camp* v. *Bullard*, 33 App. Div. 627, affirmed.

(Argued May 12, 1899; decided June 6, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered August 6, 1898, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles E. Snyder* for appellants. Defendants are not liable for tollage. (*N. B. Assn.* v. *Conkling*, 90 N. Y. 116; *Griffiths* v. *Hardenbergh*, 41 N. Y. 464; *Wing* v. *Rogers*, 62 Hun, 383; *Ward* v. *Stahl*, 81 N. Y. 406; Brandt on Suretyship, § 93; High on Injunctions, § 1635; *McCluskey* v. *Cromwell*, 11 N. Y. 593; *Jennery* v. *Olmstead*, 90 N. Y. 363; *Thomson* v. *MacGregor*, 81 N. Y. 592; *Collyer* v. *Collyer*, 113 N. Y. 442; *Preston* v. *Hawley*, 101 N. Y. 586.)

*C. D. Adams* for respondent. The case went to the jury on the whole evidence and on the merits, and the verdict was on the merits. Defendants' motion for a new trial was to review the merits on the law and the evidence, and was properly denied. (30 N. Y. 166; 53 N. Y. 211, 220; Sedgwick on Dam. §§ 185, 186.) There was no mistrial. (Code Civ. Pro. § 1185; 16 N. Y. 602; 25 N. Y. 211; 39 N. Y. 302; 62 Barb. 509; 67 N. Y. 204; 13 Hun, 582.)

VANN, J. This action was brought upon an undertaking given by the defendants under the following circumstances : In 1894 the plaintiff's testatrix owned a large quantity of land on John Brown's tract in the Adirondack wilderness, through which the north branch of the Moose river runs, as it winds and turns, for between twenty and thirty miles. John A. Dix and Edward Thomson, Jr., having purchased the soft wood trees standing on lands farther in the forest than those of the plaintiff, were preparing to float logs down the north branch to their mill some thirty miles below. On the 26th of June, 1896, the plaintiff, who had succeeded to the rights of his testatrix, recovered a judgment against Dix and Thomson perpetually restraining them from entering upon his lands and from interfering in any manner with that part of the north branch flowing over them for the purpose of floating, driving or transporting logs thereon, and from increasing or diminishing the natural flow of water in the stream over said lands by the use of dams or artificial means. This judgment, after it had been affirmed by the Appellate Division, was, by an order made on motion of the defendants therein on the 9th of April, 1897, vacated by that court, and its decision was so amended as to provide " that judgment thereon, as well as all proceedings upon the judgment appealed from, shall be suspended until and including the 20th day of May, 1897, upon condition that the defendants make, execute and file, within five days from the entry of this order, an undertaking in the sum of $5,000, with two sufficient sureties, conditioned to indemnify the plaintiff against any and all loss or damage whatsoever sustained by the plaintiff from this date to and including the 20th day of May, 1897, by reason of suspending said judgment." The object of this order was to enable Dix and Thomson to float to their mill a large quantity of logs which they had cut under the advice of counsel, and in the belief that they had the right to use the river for that purpose.

An undertaking, substantially reciting the facts, was given accordingly, signed by the defendants as sureties, who thereby promised to " pay to the plaintiff   *   *   *   any and all dam-

ages and loss whatsoever, not exceeding the sum of $5,000, sustained by the plaintiff from the 9th day of April, 1897, to the 20th day of May, both inclusive, by reason of suspending said judgment so enjoining and restraining the defendants as aforesaid."

The question presented for decision is whether the words "any and all damages and loss whatsoever," as used in said undertaking, include the tollage, or the reasonable value of the use of the river for the purpose of floating logs, as claimed by the plaintiff, or simply the damage done to the banks of the river and the property of the plaintiff adjacent thereto, as claimed by the defendants. The question is presented by an exception to evidence given in behalf of the plaintiff as to the value of the tollage and by an exception to a denial of the defendants' motion to direct a verdict of six cents in favor of the plaintiff, who furnished no evidence tending to show actual injury to his property or that he had any use for the stream at the time, or that he had lost an opportunity to rent it to others during the period in question. It appeared, however, that after the undertaking was filed, and during the period of suspension, Dix and Thomson floated over that part of the north branch which flows through plaintiff's land 2,000,000 feet of logs for a distance of sixteen miles. Witnesses for the plaintiff testified that this privilege was worth two cents a mile per thousand feet, while witnesses for the defendant stated that the tollage was worth nothing upon a stream in the situation and condition of the north branch at the time. No question was raised as to the validity of the undertaking, or as to any point except the measure of damages. The jury was instructed to give the plaintiff fair compensation for the use of the river to float the 2,000,000 feet of logs upon and the defendant took no exception to the charge. A verdict was rendered in favor of the plaintiff for $500, and the judgment entered thereon having been affirmed by the Appellate Division, the defendants come here.

Although the defendants are sureties they are bound to the extent of their promise, which must be gathered from the

words used in the instrument when read in the light of the surrounding circumstances as they existed at the time of its execution and delivery. (*Griffiths* v. *Hardenbergh*, 41 N. Y. 464.) The undertaking follows the language of the order, which is substantially recited therein, together with all the previous proceedings in the action. The engagement of the defendants embraces whatever the Appellate Division required in its order as the condition upon which its judgment was to be suspended, and this is to be considered in connection with the reason for such suspension. The reason for giving this extraordinary privilege to Dix and Thomson was to extricate them from a position of peculiar hardship. It was a favor granted to them so that they might get out their logs, which otherwise might prove a total loss, and, as suggested in the moving papers, to enable them " to take such proceedings as are permitted under the general river statutes, viz., Laws 1880, ch. 533." Such proceedings, however, do not appear to have been taken. The favor was worth something to them, and it cannot be presumed that the court intended to give them this valuable privilege wholly at the expense of the plaintiff, or with simple indemnity to him against injury to his property, without any compensation for the use thereof. The court exercised a doubtful power by suspending its own judgment, in order to permit Dix and Thomson to trespass upon lands of the plaintiff, but it required them to indemnify him " against any and all loss and damage whatsoever " by reason of such suspension. These general and comprehensive words are broad enough to include the usual tollage paid by the owner of the logs to the owner of the stream. Since the object was to indemnify against a trespass, as the defendants are presumed to have known, their promise should be held to cover the usual damages allowed by law for the use of real property without right. Unless they promised this, they promised substantially nothing, for floating logs upon a river, running through a forest, could cause little or no injury to its physical condition. Their principals had obtained an order, which enabled them to use the property of the plaintiff for

their own purposes without his consent, and when the defend-
ants promised to pay all the damages resulting, they did not
refer simply to possible injuries to the banks of a river run-
ning through a wilderness, or to structures or improvements
thereon, for there were none, but to something of a substan-
tial character. Indemnity against injury to the realty was
not needed for the protection of the plaintiff, and an under-
taking so limited would have been of no practical value to
him. The defendants clearly intended something more than
this when they signed an undertaking in the penalty of
$5,000, and if their intention did not extend to compensation
for use of the river, we are unable to discover any substantial
purpose that the bond could serve.

The defendants insist that the measure of damages is not
what the privilege of trespassing was worth to the trespassers,
but what the plaintiff actually lost through interference with
his business, loss of rent and the like. As there was no proof
of actual loss of this character, they further insist that the
plaintiff is entitled to nominal damages only. This position
would place a premium on trespassing, because it makes the
position of the trespasser more favorable than that of one
lawfully contracting. If a man's house is vacant with no
prospect of a tenant and no intention on his part of occupy-
ing it himself, and a trespasser occupies it, he must pay as
damages for the trespass the value of the use and occupation,
for this would be the duty of a tenant contracting upon a
*quantum meruit* for the use, by consent, of that which the
trespasser uses without consent.

In cases of involuntary trespass the damages are restricted
as much as possible, but when the trespass is deliberate, inten-
tional and continuous, they include, at least, the value of the
use of the premises for the period that the owner is kept out
of possession. This is the rule in actions of ejectment, for it
is provided by statute that the damages for withholding shall
" include the rents and profits or the value of the use and
occupation of the property." (Code Civ. Pro. §§ 1496–7.)
The same rule is applied in actions to recover damages for

flowing lands by the erection of a dam (*Baldwin* v. *Calkins,* 10 Wend. 175, 179), or for the use of a building during the time that the owner was deprived of such use by the wrongful act of the defendant (*Nims* v. *Mayor, etc.,* 59 N. Y. 500, 509), or for the intrusion upon land by the tracks of a railroad company (*Blesch* v. *Chicago & Northwestern Ry. Co.,* 43 Wis. 183), and in many other cases. (*Barton* v. *Fisk,* 30 N. Y. 166; *Baker* v. *Drake,* 53 N. Y. 211; *Eten* v. *Luyster,* 60 N. Y. 252, 261; *Attorney-General* v. *Tomline,* L. R. [5 Ch. D.] 750; *Hammat* v. *Russ,* 16 Me. 171; Sedgwick on Damages, §§ 185, 186; Mayne on Damages, 387; Waterman on Trespass, vol. 2, pp. 535 *et seq.*) "If," says Mr. Sutherland, "the defendant derives a benefit from the tortious use of the plaintiff's premises, the plaintiff will be entitled to damages measured by the benefit to the defendant. Where the defendant tortiously used the plaintiff's canal, the court say trespass could be brought for entering and breaking the plaintiff's close, and he could allege and prove the use of the canal as special damages. (*Ward* v. *Warner,* 8 Mich. 508, 525.) He will be entitled to recover the value of the use. (*McWilliams* v. *Morgan,* 75 Ill. 473.)   *   *   *   Where the trespass suspends or impairs the enjoyment of the premises, compensation may be given on the basis of rental value in the absence of any ground for special damages or in addition to such special damages." (Sutherland on Damages, vol. 3, pp. 366–7.)

We think that the promise, under all the circumstances, embraced more than mere indemnity against the unimportant consequences of a bare infringement of a legal right, and that it included damages in the nature of compensation for the value of the use of the river for floating logs. Such would be the measure of damages in an action against Dix and Thomson, and we regard the stipulation of the sureties as co-extensive with the obligation of their principals. The language used, and the facts surrounding the parties when it was used, show that substantial and complete indemnity was intended, and this of necessity includes the tollage or the income which the river ought to bring when used to float logs.

Whatever the plaintiff might have received from a prudent use or renting of the property, had he not been deprived of its possession, the defendants, by signing the undertaking, placed themselves under obligation to pay.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.