■ INES PAUK, Respondent, v EDGAR PAUK, Appellant. [648 NYS2d 621] —In an action for a divorce and ancillary relief, the defendant husband appeals (1) as limited by his brief, from so much of a judgment of the Supreme Court, Queens County (Zelman, J.H.O.), dated April 11, 1994, as, after a nonjury trial, (a) ordered him to pay the plaintiff wife $47,115 in attorneys fees, (b) awarded him only 25% of the value of the plaintiff's New York State Teachers Pension as of the date of the judgment, (c) awarded the plaintiff 50% of the "highest balance in the defendant's 403(b) plan from the date of marriage until the date of this judgment", (d) ordered him to pay the plaintiff $922 per month as support for the parties' child, and (e) ordered him to maintain a life insurance policy naming the child as a beneficiary until the child is emancipated, (2) from a Qualified Domestic Relations Order of the same court (Zelman, J.H.O.),

dated July 13, 1994, which directed the administrator of the defendant's pension plan to transfer to the plaintiff her share of his pension awarded to her by the judgment of divorce, (3) from stated portions of an order of the same court (Lisa, J.), dated November 22, 1994, which, *inter alia,* granted that branch of the plaintiff's motion which was for leave to enter a money judgment in the sum of $47,115, (4) from a Qualified Domestic Relations Order of the same court (Zelman, J.), dated December 22, 1994, which directed the administrator of the defendant's pension plan to transfer to the plaintiff her share of his pension awarded to her by the judgment of divorce, and (5) from a Qualified Domestic Relations Order of the same court (Zelman, J.), also dated December 22, 1994, which set forth the terms of the distribution of the defendant's share of the plaintiff's pension.

Ordered that the judgment is modified, on the law and the facts, by deleting the seventh, eighth, ninth, and tenth decretal paragraphs thereof and deleting from the fifth decretal paragraph thereof the sum of $47,115, and substituting therefor the sum of $30,615; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for a new determination of the defendant's child support obligation and the pension distribution, and for a determination of the equitable distribution of certain marital property and obligations not distributed in the judgment in accordance herewith; and it is further,

Ordered that the appeal from the Qualified Domestic Relations Order dated July 13, 1994, is dismissed, without costs or disbursements, as that order was superseded by the Qualified Domestic Relations Order dated December 22, 1994, which directed distribution of the defendant's pension plan; and it is further,

Ordered that the order dated November 22, 1994, is modified by deleting the provision thereof which granted the branch of the plaintiff's motion which was for leave to enter a money judgment in the sum of $47,115, and substituting therefor a provision granting that branch of the wife's motion to the extent of directing entry of a money judgment in the sum of $30,615; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the Qualified Domestic Relations Orders dated December 22, 1994, are reversed, on the law and the facts, without costs or disbursements, in light of our determination of the appeal from the judgment; and it is further,

Ordered that pending a new determination, the defendant shall continue to pay child support of $922 per month.

In calculating the amount of child support pursuant to the provisions of the Child Support Standards Act *(see,* Family Ct Act § 413; Domestic Relations Law § 240), the Judicial Hearing Officer opted to apply the child support percentage (in this case 17%) to the combined parental income over $80,000. While the statute explicitly vests discretion in the court to apply the stated percentage to income over $80,000, rather than apply the factors set forth in Family Court Act § 413 (1) (f), there must be some "record articulation of the reasons for the court's choice * * * to facilitate that review" *(Matter of Cassano v Cassano,* 85 NY2d 649, 655; *see also, Zaremba v Zaremba,* 222 AD2d 500). Inasmuch as the record and the court's findings of fact and conclusions of law are "bereft of the court's reason for its choice we find it appropriate to remit the matter to the Supreme Court * * * to enable it to set forth * * * the reasons for its determination" *(Zaremba v Zaremba, supra,* at 500; *see also, Jones v Reese,* 217 AD2d 783). The court's mere reference in the judgment to the factors set forth in Family Court Act § 413 (1) (f) does not demonstrate that it considered these factors, and the court's decision is completely devoid of any basis for the child support determination.

Because the court relied solely on the parties' most recent income tax returns in determining their combined income for child support purposes, and ignored substantial evidence that the wife's income was substantially higher at the time of trial, the court should make a new income determination based on the most recent financial information available.

It was also error for the court to select the date of the judgment as the valuation date in distributing the parties respective pensions. Although in general the trial court has discretion in setting valuation dates in distributing marital property based on the circumstances of the case *(see,* Domestic Relations Law § 236 [B] [4] [b]; *Kirshenbaum v Kirshenbaum,* 203 AD2d 534, 535; *Marcus v Marcus,* 137 AD2d 131; *Wegman v Wegman,* 123 AD2d 220, 234-235), in valuing pensions it is well established that contributions to the pension fund made after commencement of the matrimonial action are separate property *(see, Elmaleh v Elmaleh,* 184 AD2d 544, 545; *Glasberg v Glasberg,* 162 AD2d 586, 587; *Marcus v Marcus,* 137 AD2d 131, 138, *supra).* Moreover, the factors set forth by the court in determining that the wife was entitled to 50% of the highest value of the husband's pension, and that the husband was entitled to 25% of the wife's pension, are not supported by the record.

Thus, upon remittal, the court should value the pensions as of the date of the commencement of the action, and distribute the pensions "equitably between the parties, considering the circumstances of the case and of the respective parties" (Domestic Relations Law § 236 [B] [5] [c]).

The court failed to equitably distribute certain property and obligations. The husband was seeking half of all marital property. Moreover, the husband offered proof regarding the value of the property for which he was seeking distribution. Under these circumstances, the court does "not have the discretion to refuse to distribute such property" (*Harrell v Harrell*, 120 AD2d 565, 566; *cf., LeVigne v LeVigne*, 220 AD2d 561). The evidence established that the wife withdrew $24,000 from a tax deferred annuity shortly after the parties separated, and placed the funds into an individual retirement account (hereinafter IRA). As of December 1991, approximately three months after the commencement of this action, the IRA contained $25,105.40. As of August 30, 1991, when the action commenced, the husband's IRA contained $17,309. There is no dispute that the IRA's were marital property, as the funds contained therein were "acquired * * * during the marriage" (Domestic Relations Law § 236 [B] [1] [c]).

The evidence further established that at the time the parties purchased the marital residence in 1977 the wife borrowed $35,000 against her separate property, and contributed approximately $30,000 from that mortgage loan towards the purchase of the marital residence. When the parties sold the marital residence in 1990 this loan was not extinguished. When the action commenced there remained a balance of $25,136.86, and at the time of trial $20,890.10. On June 2, 1987, the husband borrowed $16,762.14 from his pension. When the action commenced there remained a balance of $3,303.48. The court did not determine the parties' respective liabilities on these loans, while it is not disputed that liabilities exist. In view of our holding, *infra,* that the husband is not entitled to a share in the appreciation of the wife's separate property, the balance on the mortgage loan for which he may share liability is reduced by $5,000, which constitutes the portion of the loan which was used to pay off the first mortgage on the wife's separate property at the time the loan was obtained. The court is directed to determine an appropriate valuation date, and distribute the aforementioned marital property and liabilities "equitably between the parties, considering the circumstances of the case and of the respective parties" (Domestic Relations Law § 236 [B] [5] [c]).

When the parties sold the marital residence in 1990, approximately $10,000 was placed in an escrow account because they could not agree whether the money was a gift to the husband from his parents, or a loan to the parties. Because each party received approximately $5,000 from the account, the husband contends that he is entitled to a distribution of approximately $5,000 because the evidence established that the money was a separate gift to him (see, Domestic Relations Law § 236 [B] [1] [d]). However, the husband had argued at trial that the money was a loan to the parties and, while the testimony was in conflict, the documentary evidence established that the money was a joint gift, as the transfer document named both parties, and the funds were wired to a joint account. Thus, the court did not err in distributing the funds.

The husband maintains that he is entitled to a distribution of $6,845 based on premarital property (see, Domestic Relations Law § 236 [B] [1] [d]) he contributed towards the purchase of the marital residence in 1977. The evidence established, however, that the money in question was placed in a joint bank account more than a year before the home was purchased and cannot be viewed as separate property (see, Di Nardo v Di Nardo, 144 AD2d 906). However, he testified without contradiction that he sold $3,100 worth of his premarital stock shortly before the home was purchased in 1977 and the proceeds were used to purchase the marital residence. Thus, he is entitled to a credit against the marital estate of $3,100.

In awarding attorneys' fees the court, in its decision, ordered the husband to "pay 75% of the outstanding legal fees incurred" by the wife "by reason of his bringing all these frivolous motions" and found that the husband "has not spent any money for legal fees". However, in the judgment the defendant was ordered to pay the wife "the sum of $47,115 which equals 75% of the attorneys' fees of $62,820 incurred" through the last day of the trial. Because the wife had previously paid her attorney $22,000 in legal fees the amount of fees "outstanding" was approximately $40,820 as of the last day of trial. There is, therefore, an inconsistency between the judgment, requiring the husband to pay 75% of all legal fees, and the decision, requiring him to pay, at most, 75% of the "outstanding" fees of $40,820. Requiring the husband to pay 75% of the outstanding legal fees results in a payment of $30,615, $16,500 less than the amount in the judgment.

A "written order must conform strictly to the court's decision" (Di Prospero v Ford Motor Co., 105 AD2d 479, 480) and "[w]hen there is an inconsistency between a judgment and the

decision upon which it is based, the decision controls * * * Such an inconsistency may be corrected * * * on appeal" *(Green v Morris,* 156 AD2d 331). We find that the decision controls, and that the court intended the husband to pay 75% of the outstanding fees.

While an award of counsel fees lies within the discretion of the court *(see,* Domestic Relations Law § 238; *DeCabrera v Cabrera-Rosete,* 70 NY2d 879, 881; *Levine v Levine,* 179 AD2d 625, 626), that discretion is "nonetheless to be controlled by the equities of the case and the financial circumstances of the parties" *(Maimon v Maimon,* 178 AD2d 635; *see,* Domestic Relations Law § 237 [b]; *see also, O'Brien v O'Brien,* 66 NY2d 576). Any award should "be 'reasonable in light of the skill, experience and background of * * * counsel, the nature of the services rendered, the difficulty and complexity of the issues of fact and law involved in the case, as well as the time actually spent on' " the matter *(Willis v Willis,* 149 AD2d 584, quoting *Silver v Silver,* 63 AD2d 1017, 1018; *see also, O'Neil v O'Neil,* 193 AD2d 16, 20).

Here, the court presided over the trial, heard the testimony concerning the parties' finances, and knew from the wife's attorney that the wife had been unable to pay her fees since early 1992. Moreover, based on the testimony of the wife's attorney, the court could have concluded that the husband, who was incurring no fees, had engaged in "unnecessary and protracted litigation in an apparent attempt to exhaust plaintiff emotionally and financially" *(Schussler v Schussler,* 109 AD2d 875, 878). Thus, the court did not improvidently exercise its discretion in ordering the husband to pay 75% of the outstanding fees, or $30,615 in legal fees.

We find unpersuasive the husband's contention that he is entitled to an equitable distribution of the appreciation of the wife's interest in the separate property owned by the wife which the husband claims he managed from 1977 until the parties separated in 1990. Domestic Relations Law § 236 (B) (1) (d) (3) defines "separate property" in relevant part as "the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse". In order to obtain equitable distribution of the appreciation in value of the wife's separate property, the husband was required to demonstrate the manner in which his contributions resulted in the increase in value and the amount of the increase that was attributable to his efforts *(see, Elmaleh v Elmaleh,* 184 AD2d 544, 545, *supra; Fitzgibbon v Fitzgibbon,* 161 AD2d 619; *Price v Price,* 69 NY2d 8, 17). The

husband failed to sustain this burden, and the testimony at trial established that the appreciation was caused by an upturn in the real estate market *(see, Elmaleh v Elmaleh, supra; Fitzgibbon v Fitzgibbon, supra)*. Accordingly, we discern no basis to disturb the determination that the increase in value was attributable to market forces.

The court did not improvidently exercise its discretion in ordering the husband to keep his life insurance policy in effect naming the child as the beneficiary until he was emancipated. Domestic Relations Law § 236 (B) (8) (a) specifically provides that "the court may * * * order a party to * * * maintain * * * a policy of insurance on the life of either spouse, and to designate * * * children of the marriage as irrevocable beneficiaries during a period of time fixed by the court" *(see also, Jerkovich v Jerkovich,* 100 AD2d 575).

Finally, it was not error for the Supreme Court to grant that branch of the wife's motion which was for leave to enter a money judgment for the legal fees. The husband's undertaking posted pursuant to CPLR 5519 (a) which would have entitled him to an automatic stay of the provision of the order and judgment dated April 11, 1994, which directed him to pay legal fees was not timely filed *(see, Tencza v Hyland,* 149 Misc 2d 403). However, in light of our determination that the wife is entitled to only $30,615 in legal fees, we have modified the order accordingly.

We have examined the parties' remaining contentions, and find that they are without merit. Bracken, J. P., Rosenblatt, O'Brien and Goldstein, JJ., concur.