■ CATHERINE FINKE, Also Known as CATHERINE PRENDERGAST, Respondent, v CARL FINKE, Appellant. [790 NYS2d 224]—

In a matrimonial action in which the parties were divorced by judgment entered April 14, 2000, the defendant former husband appeals, as limited by his brief, from so much of (1) an order of the Supreme Court, Nassau County (Berkowitz, J.), dated June 30, 2003, as, without a hearing, granted those branches of the motion of the plaintiff former wife which were for (a) a recalculation of the defendant's child support obligation, and to direct him to pay child support based on combined parental income in excess of $80,000, and (b) an award of an attorney's fee, and awarded the plaintiff an attorney's fee in the sum of $5,000, and (2) an order of the same court dated September 25, 2003, as, upon reargument, adhered to the prior determination.

Ordered that the appeal from the order dated June 30, 2003, is dismissed, as those portions of the order appealed from were superseded by those portions of the order dated September 25, 2003, which were made upon reargument; and it is further,

Ordered that the order dated September 25, 2003, is reversed insofar as appealed from, on the law, upon reargument, those portions of the order dated June 30, 2003, which granted those branches of the motion of the plaintiff former wife which were for (a) a recalculation of the defendant's child support obligation, and to direct him to pay child support based on combined parental income in excess of $80,000, and (b) an award of an attorney's fee, and awarded the plaintiff an attorney's fee in the sum of $5,000 are vacated, and the matter is remitted to the Supreme Court, Nassau County, for a hearing in accordance herewith; and it is further,

Ordered that one bill of costs is awarded to the defendant.

The parties settled their divorce action by entering into a stipulation of settlement dated May 13, 1999, which was incorporated, but not merged, into a judgment of divorce entered April 14, 2000. The parties stipulated, inter alia, that the plaintiff former wife would have sole custody of their three children. The defendant former husband agreed to pay the sum of $500 per week in child support for a period of three years, which

was in excess of what he would have been required to pay pursuant to the Child Support Standards Act (hereinafter CSSA) (*see* Domestic Relations Law § 240 [1-b]). The defendant so stipulated because he wanted to provide his children with the standard of living they enjoyed while the parties were married. The stipulation further provided that after the third anniversary of the stipulation, the parties' obligations to pay child support would be recalculated pursuant to CSSA guidelines. The parties also stipulated that the defendant would maintain a life insurance policy with a death benefit of $500,000, and the plaintiff would be the irrevocable beneficiary, as trustee for the benefit of the children. The defendant agreed to provide the plaintiff with documentation, upon request, that he was in compliance with this provision.

By order to show cause dated January 22, 2003, more than three years after the settlement, the plaintiff moved to hold the defendant in contempt due to his failure to document his compliance with the life insurance obligations described above. The plaintiff also moved, inter alia, for a recalculation of the defendant's child support obligation pursuant to the terms of the divorce judgment, and for an award of an attorney's fee. The plaintiff requested that the Supreme Court apply the CSSA to the defendant's entire income (which exceeded $80,000) in computing his child support obligation.

In opposition, the defendant did not dispute that he failed to make his former wife the irrevocable beneficiary of his life insurance policy, as trustee for their children, but he claimed the error was "de minimis." He further contended that a weekly payment of $500 with a cost-of-living adjustment (which was considerably less than the plaintiff requested) was sufficient for the support of the children. The defendant also opposed the plaintiff's request for an award of an attorney's fee.

The Supreme Court held the defendant in contempt for his failure to provide a life insurance policy designating the plaintiff as an irrevocable beneficiary, as trustee for the children. Without a hearing, the Supreme Court also determined, based on the defendant's agreement at the time of the divorce to pay child support on income above $80,000, and his expressed desire to maintain the children's standard of living, that the recalculated child support should be 29% of the parties' combined income, which the court concluded was $162,180.90. The defendant's proportionate share was 85%, leading to a weekly child support obligation of $768. The Supreme Court additionally determined that the plaintiff should be awarded an attorney's fee in the sum of $5,000 since the plaintiff was compelled to move to hold

the defendant in contempt, and because of the defendant's "unreasonable" interpretation of the settlement. The defendant moved to reargue only those branches of the plaintiff's motion as addressed the award of an attorney's fee and the recalculation of child support. With respect to the latter, he contended that the Supreme Court should have held a hearing before recalculating child support in the manner it did. At such a hearing, the defendant argued, inter alia, he could have presented evidence showing that the reasonable needs of the children had not increased, and that income should have been imputed to the plaintiff. The Supreme Court granted reargument, and upon reargument, adhered to its prior order.

We reverse insofar as appealed from. The Supreme Court should have held a hearing before recalculating the parties' child support obligation based on combined parental income in excess of $80,000.

Where combined parental income exceeds $80,000, the CSSA permits the court to determine the amount of child support to be paid for the amount of the excess "through consideration of the factors set forth" in the statute (see Domestic Relations Law § 240 [1-b] [c] [3]), "and/or the child support percentage," which in this case is 29%. The statutory factors include, inter alia, the financial resources of the parents and child, the health and special needs, if any, of the child, the standard of living the child would have enjoyed had the marriage not ended, and the disparity in the parents' incomes (see Domestic Relations Law § 240 [1-b] [f]; *Matter of Cassano v Cassano*, 85 NY2d 649, 653 [1995]). The court has the discretion to apply the statutory factors, the child support percentage, or both, in fixing the basic child support obligation on parental income in excess of $80,000 (*see Matter of Cassano v Cassano, supra; Pauk v Pauk*, 232 AD2d 386 [1996]). However, there must be "some record articulation of the reasons for the court's choice . . . to facilitate . . . review" (*Matter of Cassano v Cassano, supra* at 655; *Pauk v Pauk, supra*). In this case, in applying the 29% child support percentage to income in excess of $80,000, the Supreme Court stated simply that the three children in this case enjoyed a comfortable "middle class" life-style during the parties' marriage, that upon divorce, the defendant agreed to pay child support based on income in excess of $80,000, and articulated a desire to maintain the children's standard of living. Under the circumstances, we conclude that the foregoing is not a sufficient "record articulation" of the reasons for applying the percentage rather than the statutory factors, or some combination of the two. The Supreme Court's treatment of the child support

recalculation overlooks language in the parties' settlement agreement that stated, "Nothing herein contained will operate to limit the future application of the CSSA to only $80,000 of family income, *neither will such limitation mandate the consideration by the court of the excess income*" (emphasis added). Under the circumstances of this case, the Supreme Court should have held a hearing to determine, inter alia, the standard of living to which the children supposedly were accustomed, and whether that standard currently could be met by the defendant's proposed cost-of-living adjustment, or, if not, by some other increase in his child support obligation, which may or may not at the end of that hearing have equaled the $768 per week the Supreme Court ordered (*see Howard v Howard,* 277 AD2d 980 [2000]).

Finally, while we agree with the Supreme Court that the plaintiff was entitled to a reasonable attorney's fee, having been put to the task of making the motion at issue here, the Supreme Court erred in simply awarding the plaintiff $5,000, without a hearing. The plaintiff stated that she borrowed $5,000 from her current husband, and an additional $5,000 from her mother, in order to retain her attorney. She also submitted her retainer agreement. The plaintiff's attorney claimed that as of the preparation of her moving affidavit, 7.3 hours of "partners' time" had been expended on "enforcement related issues." Assuming that time should be billed at the $375 per hour counsel stated she charged for her time as well as that of her partner's, the attorney's fee totals $2,737.50. Counsel estimated that more time would be required for prospective services, such as reply papers. The record thus furnished no basis for an attorney's fee award to the plaintiff in the sum of $5,000 (beyond the plaintiff's bare request for that sum), and we conclude that the reasonable value of counsel's services should be assessed at a hearing, along with the recalculation of the parties' child support obligations (*see Kelly v Kelly,* 223 AD2d 625 [1996]). H. Miller, J.P., Cozier, S. Miller and Fisher, JJ., concur.