Tibta v 156 E 21 LLC (2025 NY Slip Op 25064)

[*1]

Tibta v 156 E 21 LLC

2025 NY Slip Op 25064

Decided on March 18, 2025

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 18, 2025
Civil Court of the City of New York, Kings County

Mohamed Tibta, Petitioner

against
156 E 21 LLC; "JOHN DOE" "JANE DOE," Respondent, 
 AMMAR OMAR, Third-party Respondent.

L&T Index No. 002263-24

Himmelstein McConnell Gribben & Joseph LLP (Milad Momeni, Esq.), for the petitioner Mohamed Tibta 

John T. Petrusky, PC (John T. Petrusky, Esq.), for respondents 156 E 21 LLC and Ammar Omar 

 

Karen May Bacdayan, J.

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc Nos: 19-31, 36-49, 57.
PROCEDURAL POSTURE
Petitioner, Mohamed Tibta (hereinafter "Tibta" or "petitioner"), commenced this Real Property Actions and Proceedings Law ("RPAPL") § 713 (10) "illegal lockout" proceeding by order to show cause and verified petition seeking to be restored to possession of his rent stabilized apartment. By decision and order dated October 30, 2024, a judgment of possession was granted to petitioner after a two-day trial, and the warrant of eviction issued three months later, on February 4, 2025. (NYSCEF Doc No.10, decision and order after trial.) Respondents filed a notice of appeal on November 27, 2024. (NYSCEF Doc No. 14.)
Now before the court is respondents' motion, pursuant to CPLR 5519 (c), or, in the alternative, CPLR 5519 (a) (6), for a stay pending appeal.[FN1]
 (NYSCEF Doc No. 22, respondents' [*2]attorney's affirmation.) As a matter of first impression, the court must set a monetary undertaking in the context of a proceeding commenced pursuant to RPAPL 713 (10) where there are no quantifiable losses. (Cf Brown v 99 Sutton LLC, 2002 NY Slip Op 40223[U] [Civ Ct, Kings County 2002] [monetary undertaking assessed based on cost of temporary housing during appeal.)
ARGUMENTS
Respondents argue that under the discretionary stay provisions of CPLR 5519 (c), "the fact[ors] the court will consider in determining a stay pursuant to CPLR 5519 (c) include the apparent merit or lack of merit of the appeal, the harm that might result to the appellant if the stay is denied, and the potential prejudice to the respondent if the stay is granted].)" (Id. ¶ 18 [internal quotation marks and citation omitted].) In the alternative, respondents argue that the court is obliged to set an undertaking as a "ministerial act" pursuant to CPLR 5519 (a) (6), after which the proceeding will be automatically stayed. (Id. ¶¶ 40-41.)
Ammar Omar ("Omar") the third-party respondent, advances that "the harm that might result . . . is clear. Both he and his family of three including a minor child would be left homeless. [Omar] and his immediate family were compelled to leave their prior residence as a result of ongoing crime occurring in the building of his former apartment and his cooperation with [the] [District Attorney's] office in connection with the ongoing crime." (Id. ¶¶ 19-20; NYSCEF Doc No. 20, Omar affirmation ¶¶ 4, 8.) Omar avers in his affirmation in support of his order to show cause that he has been trying to find another apartment within his budget and within the same neighborhood, but has had difficulty due to two hernia surgeries on December 14, 2024, which forced him to shut down his business and currently prevents him from "obtain[ing] meaningful employment for several months which is the anticipated time frame for full recovery on the surgery." He further avers that he has difficulty "present[ing] [him]self as a desirable tenant to any other landlord" due to the loss of business and inability to gain employment. (NYSCEF Doc No. 20, Omar affirmation ¶¶ 28-31.)
Respondents' counsel frames the October 30, 2024 decision and order as "in essence stating [p]etitioner was entitled to possession of the apartment due to constructive eviction and stating that he never intended to abandon the apartment. Omar and his family, however, are in actual possession of the apartment and will become homeless if the motion is denied." (NYSCEF Doc No. 22, respondents' attorney's affirmation ¶¶ 30-31 [internal NYSCEF citation omitted]; NYSCEF Doc No. 20, Omar affirmation ¶ 33.) Respondent 156 E 21 LLC argues it will suffer harm without a stay, as Ammar Omar "is a steady and stable tenant who at present pays rent [.]" (NYSCEF Doc No. 22, respondents' attorney's affirmation ¶ 25; NYSCEF Doc No. 21, Alawas affirmation ¶ 33.) Respondents contend petitioner will suffer no prejudice because he "has not paid any rent for over eight years" and "presently resides in another apartment in the [p]remises rent free." (NYSCEF Doc No. 22, respondents' attorney's affirmation ¶¶ 28-29; NYSCEF Doc No. 21, Alawas affirmation ¶ 28.) Citing to the October 30, 2024 decision/order, respondents' counsel argues that Omar "was an innocent party whose only involvement is locating the apartment in question and executing a lease for the apartment." (NYSCEF Doc No. 22, respondents' attorney's affirmation ¶ 33.)
In the alternative, respondents request the court determine an undertaking in order to [*3]"trigger" an automatic stay pursuant to CPLR 5519 (a) (6). Respondents argue the court must determine an undertaking pursuant to the statute should it deny a stay under CPLR 5519 (c), and that it "should be in the form other than the payment of money." (Id. ¶¶ 42-43.) Respondent, 156 E 21 LLC, alleges that petitioner currently resides in apartment 4F in the subject building for which there is a pending licensee holdover proceeding, 156 E 21 LLC v Tibta et al, Index Number LT-316041-24/KI. Respondents contend "[a] suitable and fair undertaking to be considered . . . would be one in which that proceeding was stayed against [p]etitioner only and without the necessity of paying any rent and/or use and occupancy to 156 E 21 LLC by [p]etitioner during the stay pending appeal in this case," while 156 E 21 LLC can be stayed "from reletting the apartment in this proceeding if [Omar] vacate[s] the apartment during the appeal." Respondents' position is that a stay conditioned upon these terms would prevent petitioner from suffering any loss during the appeal. (Id. ¶¶ 44-48.) However, on March 12, 2025, the first court appearance in the licensee holdover proceeding, petitioner entered into a stipulation consenting to a judgment of possession on the basis that petitioner herein has already vacated apartment 4F. (LT-316041-24/KI, 156 E 21 LLC v Tibta et al, stipulation and judgment of possession, NYSCEF Doc Nos.10-11.) Thus, the foregoing suggestion is no longer a viable alternative for an undertaking.
In opposition to respondents' order to show cause, petitioner argues that 156 E 21 LLC has not presented sufficient facts to demonstrate the merits of its appeal and does not "provide any analysis into why or how the appellate court is likely to arrive at a different conclusion than this [c]ourt." (NYSCEF Doc No. 36, petitioner's attorney's affirmation ¶¶ 42, 44.) While not specifically denying that he is temporarily residing in apartment 4F of the subject building, petitioner avers "I rely on the good will of my friends and colleagues to find a bed, while I attempt to regain access to my home. [] The situation in intolerable." (NYSCEF Doc No. 37, Tibta affidavit ¶¶ 11-12.)
Petitioner contends 156 E 21 LLC "fails to include any details . . . regarding [its] financial well-being," and "could simply post a bond or written undertaking" if it was "seriously facing any exigency or hardship . . . and enforcement of the [j]udgment would automatically be stayed." (NYSCEF Doc No. 36, petitioner's attorney's affirmation ¶¶ 45-46.) Citing to Pauk v Pauk, 232 AD2d 386 (2d Dept 1996), and Tencza v Hyland, 149 Misc 2d 403 (Sup Ct, Oneida County 1990), petitioner argues that application for an automatic stay for the fixing of an undertaking must have been made at the time the notice of appeal was filed on November 27, 2024; thus, respondents are "precluded from seeking an automatic stay under CPLR 5519 (a) (6), because [they] did not simultaneously move for an undertaking when [they] filed [their] notice of appeal." (Id. ¶¶ 54-59.)
In reply, respondents again request that the court consider what respondents frame as an equitable solution to a monetary undertaking. In support of this proposition, respondents cite to this court's decision in Newmont Properties v Callendar, 225 NYS3d 893 (Civ Ct, Kings County 2025), and urge an undertaking be set upon equitable grounds. Respondents also, for the first time, suggest that an undertaking be set at an amount somewhere between $515, the monthly rent for apartment 1C set forth in one of two leases admitted into evidence at trial, and $1,600, the monthly rent preserved in the second lease which was admitted into evidence for apartment 1C. (NYSCEF Doc No. 57, respondents' attorney's reply affirmation ¶¶ 9-11.)
[*4]DISCUSSION
No Requirement to File Concomitant CPLR 5519 Motion with Notice of Appeal
In Newmont Properties v Callendar, id., the landlord argued, as does respondent herein, that the tenant's motion for an undertaking pending the outcome of an appeal should be denied because it was not made concomitant with their filing a notice of appeal. In Callendar, this court analyzed Pauk v Pauk, 232 AD2d 386 (2d Dept 1996), cited by respondents, and found that it was not controlling under the facts and circumstances of that residential holdover proceeding. Pauk involved family law and domestic relations issues. No reported decision, appellate or otherwise, cites to Pauk for the proposition that strict interpretation of CPLR 5519 (a) (6) requires a motion for an undertaking be filed simultaneously with a notice of appeal. The Second Department has widely cited to Pauk, but only for propositions involving marital property and equitable distribution, not undertakings in the residential landlord-tenant law context. Only one distinguishable reported trial court decision, Vintage Flooring & Tile, Inc. v DCM of NY LLC, 44 Misc 3d 1229(A), 2014 NY Slip Op 51376(U) (Sup Ct, Kings County 2014), cites to Pauk. Citing to Pauk and Tencza v Hyland, 149 Misc 2d 403 (Sup Ct, Oneida County 1990) in a footnote,[FN2]
 the Vintage Flooring & Tile court held that an undertaking was "ineffective," not due to untimeliness of a motion pursuant to CPLR 5519 (a) (6), but because, even if the undertaking was timely posted, "respondent has not demonstrated any proof that the [u]ndertaking was ever filed with the clerk of the court pursuant to CPLR 2505," a wholly separate procedural requirement.[FN3]
 (Vintage Flooring, *2 n 5 (emphases added].) Here, as in Callendar, the court is not persuaded 
by petitioner's argument that respondents were required to simultaneously move the court 
for an undertaking when they filed their notice of appeal.
CPLR 5519 (c) — Discretionary Stay Pending Appeal
Respondents' argument that the court should consider an undertaking pursuant to the discretionary stay provisions of CPLR 5519 (c) is not persuasive.[FN4]
 In Callendar, noting the [*5]paucity of authority directly on point, this court further held that an automatic stay pursuant to CPLR 5519 (a) (6) was not appropriate given the equities which included a purportedly long-term, elderly tenant seeking succession to her deceased husband's rent stabilized apartment. Reasoning that were the stay to be conditioned upon market rent, the would-be-successor-appellant would face certain eviction prior to the Appellate Term rendering a decision after appeal, 
the court set the proceeding for a hearing regarding an appropriate discretionary stay pursuant to CPLR 5519 (c). Generally speaking, CPLR 5519 (c) undertakings are based on consideration of the merits of the appeal, and the equities of both parties. (See Davies, New York Civil Appellate Practice § 9:4 [3d ed, 8 West's NY Prac Series, June 2024 update]; 1 Newman, New York Appellate Practice § 6.04 [2023].) Here, in addition to the factors that distinguish this case from the facts in Callendar, a discretionary analysis pursuant to CPLR 5519 (c) would be an academic exercise as both the equities of the joined third-party, Omar, and the merits herein have been determined by this court after trial.
CPLR 5519 (a) (6) — Automatic Stay Pending Appeal
The relevant automatic stay provision of CPLR 5519 (a) (6) states in relevant part:
"(a) Stay without court order. Service upon the adverse party of a notice of appeal or an affidavit of intention to move for permission to appeal stays all proceedings to enforce the judgment or order appealed from pending the appeal or determination on the motion for permission to appeal where:
. . .
6. the appellant or moving party is in possession or control of real property which the judgment or order directs be conveyed or delivered, and an undertaking in a sum fixed by the court of original instance is given that the appellant or moving party will not commit or suffer to be committed any waste and that if the judgment or order appealed from, or any part of it, is affirmed, or the appeal is dismissed, the appellant or moving party shall pay the value of the use and occupancy of such property, or the part of it as to which the judgment or order is affirmed, from the taking of the appeal until the delivery of possession of the property (emphasis added)[.]"[FN5]
As recognized in Andrada Owners Corp. v DiGrazia, 38 Misc 3d 1219(A), 2013 NY Slip [*6]Op 50153(U), *3 (Civ Ct, NY County 2013), "[D]espite the lack of appellate authority directly on point, many trial courts have held that CPLR § 5519 (a) (6) is applicable to summary proceedings (internal citations omitted)." If there is a scarcity of appellate authority regarding the applicability to the automatic stay provisions of CPLR 5519 (a) (6) to summary proceedings, then there is a veridical absence of authority, or guidance, regarding appeals of judgments issued in proceedings commenced pursuant to RPAPL 713 (10).
In Brown v 99 Sutton LLC (Civ Ct, Kings County 2002), also an "illegal lockout" proceeding in which the petitioner therein prevailed, the court set a $500,000 undertaking pending appeal based on substitute housing costs. Brown stands for the proposition that a monetary undertaking in a RPAPL 713 (10) proceeding is possible when, unlike here, the cost of alternative living accommodations for the ousted tenant are discernible.[FN6]
 Brown was not cited again until 2013 in Andrada, supra, and thereafter only once in Callendar, supra, neither of which cases affected the rights of a petitioner who continued to be illegally locked out of their apartment after prevailing in a proceeding commenced pursuant to RPAPL 713 (10). Brown stands alone.
As recognized by petitioner, an undertaking in this illegal lockout proceeding does not lend itself easily to calculation of a monetary undertaking because the typical scenario is reversed. As stated by the Brown court,
"[CPLR 5519 (a) (6)] is primarily used to protect a landlord's interest in its rental property while an eviction warrant is being appealed by the tenant who is already in possession of the premises. In most cases, the undertaking would protect the landlord from the tenant's waste of the premises and failure to pay reasonable use and occupancy." (Brown, 2002 NY Slip Op 40223(U), at *4 [internal citations omitted].)
(NYSCEF Doc No. 37, Tibta affidavit ¶ 11.) Petitioner does not aver to expending any monies for alternative housing while respondents continue to deprive him of his property and violate this court's order. Thus, the court cannot calculate an undertaking of the kind set in Brown.
Regardless, the court is mindful of the view that it is incumbent on the court to set an undertaking pursuant to CPLR 5519 (a) (6). In Oleck v Pearlman, 49 Misc 2d 202 (Sup Ct, Kings County 1966), the court, interpreting the newly enacted CPLR 5519, found that it was "necessary to determine as a matter of first impression whether . . . the court of first instance may arbitrarily decline to fix any bond at all[,]" and determined that "it may not." (Pearlman, 49 Misc 2d at 202-203.)
In order to make sense of this novel issue, this court is guided by the decision in City of New York v Utsey, 28 HCR 432A, NYLJ, June 28, 2000 at 33, col 3 (Civ Ct, Kings County). The Utsey court was faced with setting an undertaking pending the appeal by alleged squatters against whom the property owner, the City of New York, had obtained a judgment of possession in a proceeding commenced pursuant to RPAPL 7 (13 (7). Because the city, pursuant to an order of condemnation, intended to demolish the building, the court could not determine what "waste could be committed by respondents to cause petitioner any damages." Thus, the court did not set an undertaking based on "waste."
Noting that CPLR 5519 (a) (6) contemplates not only an undertaking to prevent "waste" but also an undertaking for "use and occupancy," the Utsey court turned to the task of setting a monetary undertaking pending appeal. The alleged squatters argued that use and occupancy should not be based upon the benefit they were obtaining from living in the building, but, rather, on the actual loss to the city. However, as here, "no such loss [had] been proved or even alleged." (Id.) The court rejected the squatters' position, reasoning that to decline to set an undertaking would "place a premium on trespassing, because it makes the position of the trespasser more favorable than that of one lawfully contracting." (Id., citing De Camp v Bullard, 159 NY 450, 454 [1899].) Accordingly, the Utsey court set the undertaking at the fair value of use and occupancy of the units in which the respondents were squatting, i.e. the value of the benefit derived by remaining in the property.[FN7]

In De Camp v Bullard  upon which the Utsey Housing Court judge relied  the Supreme Court, Herkimer County, awarded a judgment to plaintiff-land owner, enjoining defendants-loggers from using that part of a river and its tributaries which was on plaintiff's property to float logs downstream. The Appellate Division, Fourth Department affirmed the order in its entirety, without any analysis, and the Court of Appeals affirmed the Appellate Division. (De Camp v Bullard, 159 NY at 456.) Prior to the entry of the restraining order and judgment by the Supreme Court, defendants were already in the process of floating two million (2,000,000) feet of timber stretching over 16 miles downriver towards the water on plaintiff's property. Two days after the Appellate Division affirmed the Supreme Court, defendants applied to the Appellate Division seeking remitter and amendment of the order to permit them to continue floating the logs downriver and through plaintiff's estuary. The court temporarily "suspended" the judgment and set an undertaking to indemnify plaintiff for his loss of exclusive possession of his land. Rejecting the defendants' argument that there should be no toll for crossing plaintiff's land because plaintiff could show no loss from allowing the logs to float through their property, the court based the undertaking on the value to the "trespassers" of the use of plaintiff's property. Noting that willfulness is a factor, the Court of Appeals opined:
"In cases of involuntary trespass the damages are restricted as much as possible; but, when the trespass is deliberate, intentional, and continues, they include at least the value [*7]of the use of the premises for the period that the owner is kept out of possession. (De Camp, 159 NY at 454 [emphasis added].)
In the case of an illegal lockout proceeding, the forcible entry is comparable to a deliberate and intentional trespass. While civil trespass law views trespass as a tort, here the court is not assessing damages, nor is the court assessing civil or criminal penalties for which a separate remedy exists.[FN8]
 Rather, this court's charge is to set a mandatory undertaking, i.e., perform a "ministerial act," Brown at *2, under facts and circumstances where such has never been done before.
Here, the forcible ouster has continued for two and a half months since petitioner was entitled to execute upon the warrant to remove respondents from possession. Here, as in Utsey, a judgment of possession and warrant of eviction issued as against respondent 156 E 21 LLC and third-party respondent Omar. In Utsey, when the squatters sought to remain after judgment in favor of petitioner while they appealed, their undertaking was set at the value of the premises to them. Analogizing to De Camp, respondents are akin to trespassers on petitioner's property who must post a bond while they use and occupy the property for their benefit and deprive petitioner of his legal possession, use, and occupancy of the premises, even if actual damages cannot be assessed.
Petitioner avers to relying on the kindness of friends and colleagues for shelter; respondents aver that petitioner has not paid rent in years but that they are now receiving $1,600 each month from Omar who is a steady tenant. Thus, as in Utsey and De Camp, an undertaking cannot readily be determined from quantifiable losses incurred by the parties. However, requiring nothing from respondents as they appeal a decision rendered after a two-day trial  while they remain comfortably in possession of petitioner's apartment and petitioner remains out of possession — would place a premium on self-help eviction even after a judgment of possession against the wrongdoer has entered. Accordingly, this court will set the mandatory undertaking pending appeal pursuant to CPLR 5519 (a) (6) in the amount of the value of apartment 1C to respondents. (Utsey, supra.) This amount is readily determined to be $1,600, the amount respondent 156 E 21 LLC is collecting from respondent Omar for use and occupancy per month. Finally, it is reasonable to anticipate that "the estimated time for an appeal to be decided is approximately 2 years." (Gur Assocs. LLC v Convenience on Eight Corp., 83 Misc 3d 903, 908 [Civ Ct, New York County 2024].)
CONCLUSION
Accordingly, upon the foregoing cited papers, it is hereby
ORDERED that respondents' motion for a stay pursuant to RPAPL 749 (3) and CPLR 2201, and an undertaking pursuant to CPLR 5519 (c), or, in the alternative, CPLR 5519 (a) (6), is granted to the extent that, pursuant to CPLR 5519 (a) (6), this court fixes an undertaking in the amount of $41,600 ($1,600 x 26 months),[FN9]
 and otherwise denied; and it is further
ORDERED that the undertaking is fixed in the sum of $41,600; and it is further
ORDERED that if the judgment or order appealed from, or any part of it, is affirmed, or the appeal is dismissed, respondents, 156 E 21 LLC and Ammar Omar, shall together pay petitioner the value of the use and occupancy of such property at set forth above, or the part of it as to which the judgment or order is affirmed, from the taking of the appeal until the delivery of possession of the property; and it is further
ORDERED that upon service on petitioner of the filing of the undertaking with the Clerk of the Civil Court, all proceedings to enforce the judgment of possession and money judgment, including execution of the warrant of eviction, will be stayed from the date of service of the filed undertaking upon petitioner pending disposition of the appeal; and it is further
ORDERED that all temporary stays as result of this order to show cause are lifted, and the marshal's notice of eviction may be re-served by regular mail only.
Petitioner shall serve a copy of this decision and order upon respondents, each individually, with notice of entry and file proof of same on NYSCEF.
This constitutes the decision and order of this court.
Dated: March 18, 2025
Brooklyn, NY
HON. KAREN MAY BACDAYAN
Judge, Housing Part

Footnotes

Footnote 1: Respondents have also moved to stay execution of the warrant pursuant to RPAPL 749 (3) and CPLR 2201.

Footnote 2: Tencza involved an appeal of a judgment for specific performance of the purchase of land. Tencza is a trial court decision from the Fourth Judicial Department which is not controlling. Pauk (which cites to Tencza as discussed, supra) is inapplicable to residential landlord-tenant disputes and the circumstances unique to such litigation. Moreover, Pauk is the only appellate case which cites to Tencza.

Footnote 3: CPLR 2505 states: "Filing of undertaking; service upon adverse party; time when effective. An undertaking together with any affidavit required by this article shall be filed with the clerk of the court in which the action is triable, or, upon an appeal, in the office where the judgment or order of the court of original instance is entered, and a copy shall be served upon the adverse party. The undertaking is effective when so served and filed."

Footnote 4: CPLR 5519 (c) states: "Stay and limitation of stay by court order. The court from or to which an appeal is taken or the court of original instance may stay all proceedings to enforce the judgment or order appealed from pending an appeal or determination on a motion for permission to appeal in a case not provided for in subdivision (a) or subdivision (b), or may grant a limited stay or may vacate, limit or modify any stay imposed by subdivision (a), subdivision (b) or this subdivision, except that only the court to which an appeal is taken may vacate, limit or modify a stay imposed by paragraph one of subdivision (a)."

Footnote 5: An undertaking, together with any affidavit required by Article 25 of the CPLR, must be filed "with the clerk of the court in which the action is triable, or, upon an appeal, in the office where the judgment or order of the court of original instance is entered, and a copy shall be served upon the adverse party." CPLR 2505. The undertaking is effective "when so served and filed." Id. Not until service and filing are the automatic stay provisions of CPLR 5519 (a) (6) triggered.

Footnote 6: While it is not discernible from the decision in Brown, it appears the court reached it conclusion based on a calculation of housing expenses. "Each day petitioner is out of the apartment, she has to make arrangements to live somewhere else. If petitioner prevails on appeal, her damages may include the additional time she was not in the apartment through the appellate period." Brown, 2002 NY Slip Op 40223(U), at *4-5

Footnote 7: On appeal, the Appellate Term reversed the judgment finding that appellants were not squatters, but, rather, tenants at will who were entitled to a 30-day notice of termination pursuant to Real Property Law § 228. City of New York v Utsey, 185 Misc 2d 715, 719 (App Term, 2d Dept 2000).

Footnote 8: New York City Administrative Code § 26-521 (a) and RPAPL 768 provide for civil and criminal penalties for the eviction of an occupant of a dwelling unit who has lawfully occupied the dwelling unit for thirty days or longer except to the extent permitted by law pursuant to a warrant of eviction or other order of a court of competent jurisdiction or a governmental vacate order. However, these laws have been held not to provide a basis for restoration to possession, only for penalties.

Footnote 9: 26 months is calculated by the time that has passed since respondent was entitled to execute on the warrant of eviction (2 months), plus the 24 months anticipated for the decision after appeal to be rendered.